COMMERCIAL UNION INSURANCE
COMPANY, Plaintiff-Appellee,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
Defendant-Appellant.

No. 86–8244.

United States Court of Appeals,
Eleventh Circuit.

Aug. 3, 1987.

John F. Daugherty, Robert J. McCune, Atlanta, Ga., for defendant-appellant.

Stephen M. Worrall, Edwin A. Tate, Gary L. Seacrest, Atlanta, Ga., for plaintiff-appellee.

Before GODBOLD and VANCE, Circuit Judges, and SWYGERT,* Senior Circuit Judge.

GODBOLD, Circuit Judge:

In this diversity action Commercial Union Insurance Company seeks subrogation of the amount of personal injury benefits it paid to its insured, Catherine Williams. The district court held in favor of Commercial Union. We reverse.

This action arises out of an accident in which Williams was seriously injured when her car was struck from behind by a truck owned by Dixon Transfer Company and insured by State Farm Mutual Automobile Insurance Company. It is undisputed that the accident was solely and proximately caused by the negligence of Ira Robinson, the Dixon Transfer employee driving the truck. Williams made a claim against Commercial Union for personal injury protection benefits under her no-fault insurance policy, and Commercial Union paid her $10,000, the full limit of her policy. Commercial Union then demanded reimbursement from State Farm for the no-fault benefits it had paid to Williams.

Williams also sought recovery from Dixon Transfer and its insurer, State Farm. State Farm ultimately settled the action for $100,000, the limit of its liability policy with Dixon Transfer. Only after it had paid Williams the settlement amount did State

---

* Honorable Luther M. Swygert, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

Farm respond to Commercial Union's correspondence regarding reimbursement and state that its policy limit had been exhausted. State Farm did not notify Commercial Union of the settlement negotiations with Williams until they had been completed.

Williams later demanded that Commercial Union retroactively increase her no-fault coverage to a total of $50,000 pursuant to *Jones v. State Farm Mut. Auto Ins. Co.*, 274 S.E.2d 623 (Ga.App.1980), as modified by *Flewellen v. Atlanta Casualty Co.*, 300 S.E.2d 673 (Ga.1983). Commercial Union settled this claim with Williams for $20,000. It then demanded reimbursement from State Farm for this additional payment in optional no-fault benefits, along with the $10,000 previously paid to Williams. State Farm refused to pay Commercial Union's total subrogation claim of $30,000.

The district court held that because State Farm settled with Williams without the consent or knowledge of Commercial Union, although it had notice of Commercial Union's initial subrogation claim, it was liable to Commercial Union for the total benefits paid to Williams under her no-fault policy. The court applied the principle of Georgia law that where a tort-feasor's insurer settles with the victim without the consent of the victim's no-fault insurer, and the tort-feasor's insurer has actual or constructive knowledge of the no-fault insurer's subrogation claim, such claim is not defeated by the settlement even if the tort-feasor's insurer settled for the limits of its policy. *Bituminous Casualty Corp. v. Prudential Property & Casualty Ins. Co.*, 247 Ga. 481, 277 S.E.2d 23, 24 (1981); *Poole Truck Line v. State Farm Mut. Auto Ins. Co.*, 163 Ga.App. 755, 294 S.E.2d 570, 571–72 (1982); *Vigilant Ins. Co. v. Bowman*, 128 Ga.App. 872, 198 S.E.2d 346, 347 (1973).

These Georgia cases make clear that a tort-feasor's insurance company cannot avoid subrogation liability by settling with the victim where it knows of the subrogation claim of the victim's insurer. *See Poole Truck Line*, 294 S.E.2d at 571 ("To rule otherwise would permit the wrongdoer to escape $10,000 in subrogation liability.") Thus the issue on appeal is whether there was any subrogation liability to Commercial Union when State Farm settled with Williams. Absent such liability, the Georgia principle of holding the tort-feasor's insurer liable for reimbursement of such claims is inapplicable.

The subrogation rights of a no-fault insurer in Georgia are governed by O.C.G.A. § 33–34–3(d)(1).[1] State Farm contends that under this statute, as interpreted by the Georgia courts, State Farm was not liable to Commercial Union on the latter's subrogation claim when State Farm settled with Williams.

In *Smith v. Employers' Fire Ins. Co.*, 340 S.E.2d 606 (Ga.1986) the Supreme Court of Georgia considered the following question:

Where [the injured's] insurer has paid him to the limits of his policy, and he is still not fully compensated for his injuries, does he get the first shot at the tort-feasor's insurance to compensate him fully, or does his insurer receive the first shot at the tort-feasor's insurance to compensate it for the money that it paid to [the injured] under his policy?

*Id.* at 607. The court noted that the statutory scheme contained "separate procedur-

---

1. Section 33–34–3(d)(1) has been amended several times since its enactment. The statute in effect at the time of the accident and subsequent settlement provided in relevant part:

Insurers and self-insurers providing benefits without regard to fault ... shall not be subrogated to the rights of the person for whom the benefits are provided except in those motor vehicle accidents involving two or more vehicles, at least one of which is a motor vehicle weighing more than 6,500 pounds unloaded. The right of recovery and the amount of recovery shall be determined on the basis of

tort law between the insurers or self-insurers involved.... If the responsible tort feasor is uninsured or is not a self-insurer, the insurer or self-insurer providing the benefits shall have a right of action to the extent of benefits provided against such tort-feasor only in the event that the person for whom benefits are provided has been completely compensated for all economic and noneconomic losses incurred as a result of the motor vehicle accident.

O.C.G.A. § 33–34–3(d)(1) (1978 version).

al and substantive rules for dealing with financially responsible and financially irresponsible tort-feasors. Financially responsible means insured or self-insured. OCGA § 40–9–2." 340 S.E.2d at 607. The tort-feasor in *Smith* and the tort-feasor in the instant case are both "financially responsible" in this sense. The court reaffirmed its earlier holding in *Blaylock v. Georgia Mutual Ins. Co.*, 238 S.E.2d 105 (Ga.1977) that a victim is entitled to priority over its insurer in access to the proceeds of the "financially responsible" tort-feasor's insurance policy where the benefits are inadequate to cover both claims.

We must apply this full compensation requirement to Catherine Williams, the insured in this case. At the time that State Farm settled for $100,000 Williams had received $10,000 from Commercial Union. If $110,000 was not enough to fully compensate her, then the priority requirement of *Smith* and *Blaylock* would have eliminated any liability to Commercial on its subrogation claim, and it suffered no harm by State Farm's failure to involve it in the settlement negotiations. On the record before us we cannot determine with certainty that $110,000 would not fully compensate Williams. We therefore remand this case to the district court for a determination of whether that amount would be sufficient to constitute full compensation. If not, judgment must be entered for State Farm. If Williams would be fully compensated by some amount short of $110,000, Commercial Union will be entitled to judgment for the ignored subrogation liability.

REVERSED and REMANDED with instructions.